UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING IN PART PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER ECF [10]**

Before the Court is Petitioner's Motion for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 10. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS IN PART** the TRO Application.

I.   **BACKGROUND**

On June 12, 2025, Petitioner Artem Vaskanyan ("Petitioner" or "Vaskanyan") filed a Petition for Writ of Habeas Corpus against James Janecka, Warden of the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center; Thomas Giles, Director of the Los Angeles ICE Field Office; Todd Lyons, Acting Director of ICE; Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); and Pamela Bondi, Attorney General of the United States (collectively, "Respondents" or "the government"). ECF 1 (Pet.). On June 17, 2025, after meeting and conferring with the government, Petitioner filed the instant TRO Application. ECF 10 (Appl.).

The Petition and TRO Application allege the following: Vaskanyan is a 45-year-old man born in the former Soviet Republic of Azerbaijan. ECF 10-1 (Freidel Suppl. Decl.) ¶ 8, Ex. G. He is ethnically Christian Armenian. Pet. ¶ 21. Due to the ethnic cleansing of Armenians by Azerbaijan, he was forced to flee Azerbaijan as a child in approximately 1986. Freidel Suppl. Decl. ¶ 8, Ex. G. He was ultimately granted refugee status in the United States, along with his mother and brother, and arrived here in approximately 1993. Appl. at 6. Vaskanyan never became a citizen of Russia and never lived or acquired citizenship in the post-Soviet Republic of Azerbaijan. Pet. ¶ 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

In December 2001, Vaskanyan was convicted in the Hampden County Superior Court of Massachusetts of home invasion, as well as additional counts of armed assault with intent to rob, two counts of assault and battery with a dangerous weapon, and one count of assault and battery. ECF 14-1 (Suarez Decl.) ¶ 6. He was sentenced to a lengthy term of imprisonment. *See id.* (describing the term of imprisonment as between 25-30 years); Pet. ¶ 26 (noting a term of imprisonment of 30-35 years). While in criminal custody, Vaskanyan obtained a bachelor's degree from Boston University, learned multiple languages, completed numerous classes and certificates, published books of poetry, and demonstrated good character. Pet. ¶¶ 32-34; *see* ECF 1-1 (Freidel Decl.) ¶¶ 2-15, Exs. A-N. In September 2024, the Massachusetts Superior Court determined that Vaskanyan's criminal sentence violated the Massachusetts Constitution and that he had over-served his sentence by nine years for a non-homicide offense in which he was not the principal actor. Pet. ¶¶ 28-29; Freidel Decl. ¶ 3, Ex. B. He had also accrued five years of "good time" based on exemplary behavior. *Id.* He was released from criminal custody in November 2024. Pet. ¶ 31.

While in criminal custody, Vaskanyan appeared *pro se* before an Immigration Judge in the Boston Immigration Court. Freidel Suppl. Decl. ¶ 2, Ex. A. On April 26, 2012, Vaskanyan was ordered removed. *Id.* The removal order designated Russia, or in the alternative, the Republic of Azerbaijan, as the countries of removal. *Id.* Even before he was ordered removed by the Immigration Court, Vaskanyan proactively attempted to obtain travel documents to facilitate his release from custody. *Id.* ¶ 3, Ex. B (indicating that Petitioner applied for a travel document or passport from the Republic of Azerbaijan in 2011). In 2014, Russia informed Vaskanyan that there was no record of him living in Russia as a child and that Russia would not recognize or accept him as a citizen. Pet. ¶ 40; Freidel Decl. ¶ 21, Ex. T. Vaskanyan has continued to engage in communications with the Republic of Azerbaijan, but because it has been at war with Armenia and was engaged in the ethnic cleansing of Armenians, it has steadfastly refused to recognize Petitioner as a citizen. *See* Freidel Decl. ¶ 20, Ex. S. In 2017, Petitioner notified the Immigration Court that he could not be removed to either Russia or Azerbaijan. Freidel Suppl. Decl. ¶ 4, Ex. C.

On November 22, 2024, upon release from criminal custody, Vaskanyan was transferred to ICE custody. *See* Pet. ¶ 35. While in ICE custody, Vaskanyan once more applied for a travel document and passport from the Republic of Azerbaijan. Freidel Suppl. Decl. ¶ 5, Ex. D; *see also* Freidel Decl. ¶ 20, Ex. S ¶ 12. He then followed up by calling Azerbaijan's Consulate and Embassy. Freidel Decl. ¶ 20, Ex. S. His counsel, Irene Freidel, also provided information in response to questions by the Azerbaijan government. Freidel Decl. ¶ 22, Ex. U.

Vaskanyan was initially detained at the Donald W. Wyatt Detention Facility in Central

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

Falls, Rhode Island. *See* Pet. ¶ 35. While there, Vaskanyan continued to cooperate with ICE, and his counsel submitted an attorney appearance with ICE on his behalf in December 2024. Freidel Suppl. Decl. ¶ 6, Ex. E. On February 10, 2025, following a 90-day custody review, ICE issued a Decision to Continue Detention, denying Petitioner's release on the grounds that he poses a danger to the community and a flight risk. Freidel Decl. ¶ 23, Ex. V.

On or about February 1, 2025, without notice to Vaskanyan or his counsel, ICE transferred Vaskanyan from Wyatt Detention Facility to the Buffalo Federal Detention Facility in Batavia, New York. Pet. ¶ 42. Once there, ICE again asked Vaskanyan to submit a travel document and passport application to Azerbaijan. Appl. at 8. Vaskanyan complied and submitted an application on February 19, 2025. Freidel Suppl. Decl. ¶ 7, Ex. F.

On April 2, 2025, Vaskanyan filed a habeas petition in the Western District of New York on the ground that he is stateless, and his removal was not reasonably foreseeable. Pet. ¶ 44; *see* Pet. for Writ of Habeas Corpus, *Vaskanyan v. Kurzdorfer*, No. 1:25-cv-00295-JLS (W.D.N.Y. Apr. 2, 2025). In early May 2025, ICE conducted a 180-day custody review and interviewed Vaskanyan. Appl. at 8. ICE has not served a decision of that custody review on Vaskanyan or his counsel. *Id.* On May 20, 2025, ICE notified Vaskanyan's counsel that Azerbaijan had made the decision that it would not issue Vaskanyan travel documents. Freidel Decl. ¶ 24, Ex. W. On May 22, 2025, the district court dismissed Vaskanyan's habeas petition because Vaskanyan had spent less than a "presumptively reasonable" 180 days in ICE custody at the time of filing the habeas petition. *See* Decision and Order, *Vaskanyan v. Kurzdorfer*, No. 1:25-cv-00295-JLS (W.D.N.Y. May 22, 2025).

On May 7, 2025, for the first time since he was ordered removed in 2012, ICE requested that Vaskanyan submit a citizenship application to Armenia. Pet. ¶ 48. Although Vaskanyan is ethnically Armenian, he has never lived in Armenia, has no relatives in Armenia, and does not speak Armenian. *Id.* Vaskanyan maintains that he is not a danger to the community or a flight risk. *Id.* ¶¶ 50-52. On or about June 9, 2025, without prior notice to counsel, ICE transferred Vaskanyan to Adelanto ICE Processing Center in Adelanto, California, where he presently remains detained. Pet. ¶ 53; *see* Freidel Decl. ¶ 25, Ex. X. At Adelanto, Vaskanyan was once again asked to complete an application for Armenian citizenship—the same document ICE had asked him to complete in New York one month prior. Appl. at 8. Vaskanyan's application for Armenian citizenship has been forwarded to the Armenian consulate for processing. Suarez Decl. ¶ 14. Vaskanyan has now been in ICE custody for approximately seven months. Appl. at 9.

Petitioner's TRO Application seeks a court order restraining Respondents from transferring

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

or removing Petitioner to a third country while his Petition is pending. Appl. at 5. On June 20, 2025, the government filed its Opposition to the TRO Application. ECF 14. On June 20, 2025, the Court ordered Petitioner to file a Reply in support of the TRO Application no later than 10:00 a.m. on June 23, 2025. ECF 15. Petitioner timely filed his Reply. ECF 16. On June 24, 2025, Petitioner filed a Notice of Relevant Authority, advising the Court of the Supreme Court's decision in *Department of Homeland Security v. D.V.D.*, No. 24A1153, 2025 WL 1732103 (U.S. June 23, 2025). ECF 17.

## II.   LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another," *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

## III.   DISCUSSION

### A.   *Winter* Factors

The Court finds that, on balance, the *Winter* factors weigh in favor of granting the TRO Application.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

### 1. *Likelihood of Success on the Merits*

"Likelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation and internal quotation marks omitted), especially for constitutional claims, *see Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). Petitioner contends that his continued detention in Respondents' custody violates his right to due process under the Fifth Amendment of the United States Constitution, as well as the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a). Pet. ¶¶ 61-67.

Under the INA, when a noncitizen is ordered removed, the government ordinarily must secure the noncitizen's removal from the United States within a period of 90 days, known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following dates: (i) "[t]he date the order of removal becomes administratively final;" (ii) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order;" or (iii) "[i]f the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement. *Id.* § 1231(a)(1)(B)(i)-(iii). Certain noncitizens ordered removed may be detained beyond the 90-day removal period, including, *inter alia*, those who are removable under 8 U.S.C. § 1227(a)(2) for certain criminal offenses, those determined to be a risk to the community, or those unlikely to comply with the order of removal. *Id.* § 1231(a)(6). If released, they must be subject to terms of supervision. *Id.*

In *Zadvydas v. Davis*, the Supreme Court held that the post-removal-period detention scheme contains "an implicit 'reasonable time' limitation." 533 U.S. at 682. That is, "the statute, read in light of the Constitution's demands, limits [a noncitizen]'s post-removal-period detention to a period reasonably necessary to bring about that [noncitizen]'s removal from the United States. It does not permit indefinite detention." *Id.* at 689. The Court reasoned that "[a] statute permitting indefinite detention of an [noncitizen] would raise a serious constitutional problem," because "[t]he Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person . . . of . . . liberty . . . without due process of law.'" *Id.* at 690. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court observed that the first justification for post-removal-period detention—risk of flight—is "weak or nonexistent where removal seems a remote possibility at best." *Id.* As for the second justification—protecting the community—the Court, observed that it has "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 691. Where "preventive detention is of potentially *indefinite* duration," the Court has "demanded that the dangerousness rationale be accompanied by some

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

other special circumstance . . . that helps to create the danger." *Id.*

To determine whether the post-removal-period detention is, or is not, lawful, the Supreme Court directed courts to consider "whether the detention in question exceeds a period reasonably necessary to secure removal," measuring reasonableness "primarily in terms of the statute's basic purpose" of "assuring the [noncitizen]'s presence at the moment of removal." *Id.* at 699. The Court prescribed that the "presumptively reasonable" period of detention is six months. *Id.* at 701. In setting forth this six-month presumption, however, the Court made clear that it "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a[] [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Thus, after this six-month period, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* For detention to remain reasonable, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

The Court finds that Petitioner has demonstrated a likelihood of success on the merits of his due process claim, or at a minimum serious questions going to the merits. Petitioner's detention has exceeded the presumptively reasonable six-month period, and he has "good reason to believe" that there is no significant likelihood of his removal in the reasonably foreseeable future. *See id.* Although Petitioner's order of removal became final in 2012, the removal period did not begin until he was released from state custody in November 2024. *See* 8 U.S.C. § 1231(a)(1)(B)(iii). The six-month period therefore lapsed approximately one month ago. Petitioner was ordered removed to Russia, or in the alternative, Azerbaijan. Freidel Suppl. Decl. ¶ 2, Ex. A. Both countries have stated that they will not recognize Petitioner as a citizen or issue him travel documents. Freidel Decl. ¶¶ 10, 24, Exs. I, W. Where removal to every other country designated by statute is "impracticable, inadvisable, or impossible," removal can still be effectuated to any "country whose government will accept the [noncitizen] into that country." 8 U.S.C. § 1231(b)(2)(E)(vii). Petitioner maintains that although he has completed an application for Armenian citizenship, he does not have the documents required to prove his Armenian ethnicity by descent. Appl. at 14 (citing *Citizenship*, Ministry of Foreign Affairs of The Republic of Armenia, https://www.mfa.am/en/citizenship/ (last visited June 20, 2025)). As such, "there is currently no reason to believe that Armenia[] will provide Petitioner with citizenship, and certainly not enough reason to believe that it will do so in the near future such that Petitioner's removal is 'reasonably foreseeable.'" Appl. at 13-14. Petitioner is not required to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable," *Zadvydas*, 533 U.S. at 702, only that that he has "good reason to believe that there is no significant likelihood of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

removal in the reasonably foreseeable future," *id.* at 701. Based on his stateless status and his reasonable belief that he is unable to qualify for Armenian citizenship by descent, Petitioner has done so here.

At this early stage, the government has not adequately rebutted Petitioner's showing. *See Zadvydas*, 533 U.S. at 701. ICE concedes that it will not be possible to remove Petitioner to Azerbaijan or Russia. Suarez Decl. ¶ 10. However, it is pursuing the possibility of removing Petitioner to Armenia. *Id.* ¶ 12. Armenia has a process by which ethnic Armenians can obtain Armenian citizenship through a "simplified application that can be processed at the Armenian consulate." *Id.* ¶ 11. Petitioner's application is pending, *id.* ¶¶ 13, 14, and ICE now expects to receive an answer from the Armenian consulate within approximately two weeks, *id.* ¶ 15. Yet, it is notable that Petitioner was directed to apply for Armenian citizenship only after his detention exceeded six months and became presumptively unconstitutional. Appl. at 4. And even though the government may receive a response from Armenia in the near term, it does not rebut Petitioner's showing that he lacks the documentation needed to establish his eligibility for Armenian citizenship. *See* Appl. at 14. At best, the government has shown that "good faith efforts to effectuate . . . deportation continue," and that Petitioner's removal is not impossible. *Zadvydas*, 533 U.S. at 702 (citation omitted). *Zadvydas*, however, expressly rejected such a high standard for release, explaining that it "demands more than our reading of the statute can bear." *Id.* Thus, this factor weighs in favor of granting the TRO Application.

### 2. *Irreparable Harm*

Petitioner argues that in the absence of a TRO, he is at risk of transfer outside of this judicial district or removal to an undesignated third country without notice and an opportunity to be heard. Appl. at 16. The government responds that the Court would retain jurisdiction over the Petition even if Petitioner is transferred to another facility, and his request for notice and opportunity to be heard is "needlessly duplicative" of ICE's established protocol and the class-wide preliminary injunction issued in *D.V.D. v. U.S. Department of Homeland Security*, No. CV 25-10676-BEM (D. Mass. Apr. 18, 2025). ECF 14 at 12.

While Petitioner has made a threshold showing that he is likely to be transferred during the pendency of this Petition, having previously been transferred to three different facilities in the past seven months, the Court is not persuaded that it would lose jurisdiction over the Petition if Petitioner is transferred to another ICE facility. Federal courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This language requires "nothing more than that the court issuing the writ have jurisdiction over the custodian." *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 495

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

(1973)). For "core habeas petitions" challenging present physical confinement, "jurisdiction lies in only one district: the district of confinement." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005-06 (2025) (quoting *Padilla*, 542 U.S. at 433). Furthermore, in such core habeas challenges, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Padilla*, 542 U.S. at 435. Petitioner maintains that notwithstanding the *Padilla* rules governing the *filing* of a habeas petition, "there is ambiguity in the case law as to whether the Court would maintain jurisdiction [over a properly filed habeas petition] following Petitioner's inevitable transfer." ECF 16 at 4. But in *Ex Parte Endo*, a case involving the internment of a Japanese-American citizen, the Supreme Court held that a district court "acquired jurisdiction" upon the filing of a habeas petition in the district where the internment camp was located and that the transfer of the petitioner to another facility outside of the district "did not cause it to lose jurisdiction where a person in whose custody she is remains within the district." 323 U.S. 286, 306 (1944).

In *Padilla*, the Supreme Court summarized the *Endo* holding as follows: "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." 542 U.S. at 441. Consistent with *Endo*, the Ninth Circuit has held that a district court's jurisdiction over a § 2241 petition "attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) (citation and quotation marks omitted).

Citing dicta in *Endo*, Petitioner urges that the *Endo* rule applies in only a "narrow[] set of circumstances" where (1) there is no evidence that the respondents moved the petitioner to evade habeas proceedings and (2) one of the existing respondents with legal control over the petitioner expressly agrees to produce the petitioner if a writ is issued. ECF 16 at 5. Petitioner's reading of *Endo* is impermissibly narrow and against the weight of Supreme Court and Ninth Circuit authority, as described above. The Court agrees with numerous district courts that have recently interpreted *Endo* to find that a district court retains jurisdiction over a habeas petition notwithstanding a petitioner's transfer out of the district. *See, e.g., Acosta v. Doerer*, No. 5:24-CV-01630-SPG-SSC, 2024 WL 4800878, at *4 (C.D. Cal. Oct. 24, 2024) (following *Endo* and *Francis* in holding that the district court maintained jurisdiction even after petitioner, an immigration detainee, was transferred from one federal facility to another); *Singh v. United States Immigr. & Customs Enf't Field Off. Dir.*, No. 2:24-CV-00705-RSL-TLF, 2025 WL 746295, at *8 (W.D. Wash. Feb. 14, 2025), *R. & R. adopted*, 2025 WL 745629 (W.D. Wash. Mar. 7, 2025); *Khalil v. Joyce*, No. 25-CV-01963 (MEF)(MAH), 2025 WL 972959, at *21 (D.N.J. Apr. 1, 2025) ("[A] court keeps power over a habeas case, even after the petitioner-detainee may have been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

transferred out of the court's territory."); *Rincon-Corrales v. Noem*, No. 2:25-CV-00801-APG-DJA, 2025 WL 1342851, at *2 (D. Nev. May 8, 2025) ("[O]nce a petitioner has properly filed a habeas petition in the district of confinement, any subsequent transfer does not strip the filing district of habeas jurisdiction.").

*Endo* squarely controls here. Petitioner challenges his present physical confinement and seeks release, such that his Petition constitutes a core habeas matter. *See Doe v. Garland*, 109 F.4th 1188, 1192, 1193 (9th Cir. 2024) (finding that a similar petition and prayer for immigration bond hearing or release to fall within *Padilla*'s rules for core habeas challenges). He properly filed his Petition in the judicial district where the Adelanto ICE Processing Center is located and named James Janecka, the warden of the facility, as a Respondent. *Cf. id.* at 1190, 1192 (finding that the district court had "erroneously exercised jurisdiction" over a petition which "did not name [the petitioner's] immediate custodian" and was filed "outside of the district where he was confined"). Because the Court properly acquired jurisdiction over the Petition upon filing, Petitioner's transfer beyond this district would not defeat the Court's jurisdiction to consider the merits of the Petition.

Petitioner's removal to a third country without due process, however, *is* likely to result in irreparable harm at this time. As explained above, the government intends to deport Petitioner to Armenia, a third country not identified in Petitioner's order of removal. Although Petitioner can be removed to a third country, a specific carve-out in the statute prohibits removal to countries where the noncitizen would face persecution or torture. 8 U.S.C. § 1231(b)(3)(A). Relatedly, Congress codified protections enshrined in the Convention Against Torture ("CAT") prohibiting any person from being removed to a country where they would be tortured. *See* 28 C.F.R. § 200.1; 8 C.F.R. § 208.16-18, 1208.16-18. "In other words, third-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings." *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1142968, at *3 (D. Mass. Apr. 18, 2025). In light of these statutory protections, the district court in *D.V.D.* recently issued the following class-wide preliminary injunction against DHS:

> All removals to third countries, *i.e.*, removal to a country other than the country or countries designated during immigration proceedings as the country of removal on the non-citizen's order of removal, must be preceded by written notice to both the non-citizen and the non-citizen's counsel in a language the non-citizen can understand. Following notice, the individual must be given a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for CAT protection prior to removal. If the non-citizen demonstrates "reasonable fear" of removal to the third country, Defendants must move to reopen the non-citizen's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

immigration proceedings. If the non-citizen is not found to have demonstrated a "reasonable fear" of removal to the third country, Defendants must provide a meaningful opportunity, and a minimum of fifteen days, for the non-citizen to seek reopening of their immigration proceedings.

This Preliminary Injunction applies to the Defendants, including the Department of Homeland Security, as well as their officers, agents, servants, employees, attorneys, any person acting in concert, and any person with notice of the Preliminary Injunction. Accordingly, no Defendant may avoid their duty to follow the Preliminary Injunction by involving or ceding responsibility to any other person.

*D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1453640, at *1 (internal citations omitted).[1]

Petitioner seeks to be protected by a TRO in this case providing "the same notice requirements" as the preliminary injunction issued in *D.V.D.* Appl. at 21. The government argues that Petitioner has not explained "why he believes that a *second* court order would be more likely to ensure Respondents' compliance than the first." ECF 14 at 12. It concedes, however, that if the *D.V.D.* order "were to be modified or vacated . . . , then Petitioner might have reason to seek a comparable order from a different court." *Id.* at 12. This has now come to pass. Just two days ago, June 23, 2025, the Supreme Court granted the government's emergency application for a stay of the *D.V.D.* order pending the disposition of the government's appeal in the First Circuit and disposition of any timely-filed petition for a writ of certiorari. *D.V.D.*, 2025 WL 1732103 (U.S. June 23, 2025).

The government insists that there is no evidence that Respondents have failed to comply with the preliminary injunction issued in *D.V.D.* or its own internal protocol and that Petitioner will be afforded the process required "in any case." ECF 14 at 12 & n.2. However, there *is* evidence that the government has violated the *D.V.D.* injunction, repeatedly, as Justice Sotomayor observed in her dissent to the stay grant:

---

[1] The district court in *D.V.D.* certified the following class: "All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed." 2025 WL 1142968, at *11-12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

> In matters of life and death, it is best to proceed with caution. In this case, the Government took the opposite approach. It wrongfully deported one plaintiff to Guatemala, even though an Immigration Judge found he was likely to face torture there. Then, in clear violation of a court order, it deported six more to South Sudan, a nation the State Department considers too unsafe for all but its most critical personnel.

*D.V.D.*, 2025 WL 1732103, at *1. Moreover, now that the *D.V.D.* preliminary injunction has been stayed, the Court is persuaded by Petitioner's argument that Respondents may try to remove him to a third country without affording him adequate notice and opportunity to be heard. ECF 16 at 8. This is irreparable harm, plain and simple. Thus, this factor weighs strongly in favor of granting the TRO Application.

### 3. Balance of Equities and Public Interest

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues that these factors weigh decidedly in his favor because protecting his constitutional right to be free from unlawful detention is paramount to the public interest and overrides the government's interest in prompt removal. Appl. at 22-24.

The Court agrees. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002), *abrogated on other grounds by Winter*, 555 U.S. 7). In cases implicating removal, "there is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken*, 556 U.S. at 436. Although there is a countervailing "public interest in prompt execution of removal orders," *id.*, it is well-established that "our system does not permit agencies to act unlawfully even in pursuit of desirable ends," *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, these factors weigh strongly in favor of issuing a TRO in this individual case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

### B.  Scope of Relief

An injunction "should issue only where the intervention of a court of equity 'is essential in order effectually to protect . . . rights against injuries otherwise irremediable.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)).  Although Petitioner seeks a temporary order enjoining the government from transferring or removing him during the pendency of this action, he implicitly recognizes that the irremediable injury here is removal to a third country *without notice*.  See Appl. at 21 (seeking "the same notice requirement" as that ordered in *D.V.D.*), 22 (same); *cf. D.V.D.*, 2025 WL 1142968, at *23 ("Here, the "irremediable" injury would be deportation without meaningful opportunity to present a claim based on fear of persecution, torture, or death.").  Thus, at this time, the Court circumscribes its remedy and declines to enter the full extent of the relief requested by Petitioner.  As the government acknowledges, the Court retains jurisdiction to hear Petitioner's case even if he is transferred to a facility beyond this district.  Nevertheless, Petitioner has demonstrated irreparable harm arising from his removal to a third country without due process, and as such, the government must provide Petitioner with adequate notice and a meaningful opportunity to raise any fear-based claim under CAT prior to effectuating his removal.

### C.  Bond

Rule 65(c) provides that a court "may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)).  In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (citation omitted).  That is, the mandatory language of Rule 65(c) does not "absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).  Here, Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO, and a bond would pose a significant hardship on Petitioner who has been incarcerated for more than 24 years and is represented by *pro bono* counsel.  The Court therefore exercises its discretion and waives the bond requirement under Rule 65(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-01475-MRA-AS | Date | June 25, 2025 |
|---|---|---|---|
| Title | *Artem Vaskanyan v. James Janecka, et al.* | | |

## IV.  CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED IN PART**. The Court **ORDERS** as follows:

1.  Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents shall not remove Petitioner to a third country, *i.e.*, a country other than the countries designated as the countries of removal in Petitioner's final order of removal (Russia and Azerbaijan), without written notice to both Petitioner and Petitioner's counsel in a language the Petitioner can understand. Following notice, Petitioner must be given a meaningful opportunity, and **a minimum of ten (10) days**, to raise a fear-based claim for protection under the Convention Against Torture prior to removal. If Petitioner demonstrates "reasonable fear" of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings. If Petitioner is not found to have demonstrated a "reasonable fear" of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of fifteen (15) days, for the non-citizen to seek reopening of his immigration proceedings.

2.  This TRO shall take effect on **June 25, 2025**, and expires on **July 9, 2025**. The TRO may be extended for good cause or upon Respondents' consent.

3.  Respondents are **ORDERED TO SHOW CAUSE** on **July 7, 2025, at 11:00 a.m.** why a preliminary injunction should not issue. *See* L.R. 65-1. Petitioner may supplement his TRO Application no later than **July 1, 2025**, and Respondents must file any written response to the Order to Show Cause no later than **July 3, 2025**. Petitioner may file a reply no later than **July 5, 2025**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Deputy Clerk   mku